UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHANIE WILLIAMS, ET AL,

    Plaintiffs,

v.

CITY OF GROSSE POINTE PARK, ET AL,

    Defendants.
    _____/

Case No. 03-73596

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT [32]**

On August 17, 2003, Officer Michael Miller, a member of the City of Grosse Pointe Park Police Department, shot Terrance Williams, a minor, seriously injuring him, as Williams attempted to flee from law enforcement authorities in the stolen vehicle that he was driving when stopped by the Police. Plaintiffs subsequently filed this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Officer Miller violated Williams' Fourth and Fourteenth Amendment rights when he used deadly force to seize Williams and then failed to timely seek medical care, thus showing deliberate indifference to Williams' serious medical needs.[1] Plaintiffs further allege that the City violated Williams' civil rights because

---

[1] Plaintiffs in this matter are Williams' mother, acting on her own behalf and as next friend for her teenage son, and Williams' father.

Plaintiffs' state law claims were remanded by the Court on October 28, 2004. (1st Am. Compl., Counts I, IV and V.) Plaintiffs' Fifth Amendment claim was dismissed by the Court on December 6, 2004.

its policies, practices, customs, or procedures allowed the use of unreasonable force and deliberate indifference to serious medical needs. (1st Am. Compl., Counts II and III.)

This matter comes before the Court on Defendants' motion to dismiss or for summary judgment. For the reasons stated below, Defendants' motion is GRANTED.

**I.   Facts**

The facts giving rise to Plaintiffs' lawsuit are as follows. On August 17, 2003, Williams and two friends, Darren Sherman and Kyle Turner, devised a plan where Williams would drive around with the other two looking for cars to steal. They drove around in a stolen green Dodge Shadow. Once a potential target car was located, Williams would drive close to it and one of the passengers would reach out of the car window and try to open the car's door. If the car had an alarm, Williams and the other two would drive away. If the car did not have an alarm, Williams would drive around the block, park, and walk back to the target vehicle with a brick and a screwdriver and attempt to steal it. Darren Sherman would then take over as driver of the Dodge Shadow. Kyle Turner's job was to be the look out. He was to sound the horn if someone was coming. While in Grosse Pointe, the three were attempting to steal a gold-colored Jeep Cherokee when someone in a car scared them off. (Defs.' Ex. A at 4, Police Interview of Kyle Turner.)

At approximately 7:10 p.m., Sgt. Hoshaw and Officer Miller of the Grosse Pointe Park Police Department received a citizen report that three persons in a green Dodge Shadow were tampering with vehicles in the area of Kercheval/Buckingham Streets. (Defs.' Ex. B, 8/20/03 Investigator's Report; Ex, F, Sgt. Hoshaw's Preliminary Complaint Record; Plfs' Ex. A, Badge No. 137, Preliminary Compl. Record.) The citizen also provided the license plate

number of the Dodge. (Defs.' Ex. B, 8/20/03 Investigator's Report; Ex, F, Sgt. Hoshaw's Preliminary Complaint Record.)

Sgt. Hoshaw, while in his squad car, received additional information from central dispatch that the citizen making the report was still following the green Dodge Shadow and gave its location. Sgt. Hoshaw observed a green vehicle cross Warren Avenue at Bedford. It looked like a Dodge Shadow. Sgt. Hoshaw got into position behind the Dodge. Dispatch re-broadcast the plate number, and Sgt. Hoshaw had previously been advised that the Dodge Shadow was reported as stolen out of Detroit on August 17, 2003. (Defs.' Ex. F.)

Sgt. Hoshaw notified dispatch that his marked police car was behind the Dodge and was following it. He continued to follow the Dodge without activating his emergency lights and siren. The Dodge Shadow continued to travel, observing all traffic laws. Sgt. Hoshaw broadcast the travel route to other responding units. (Defs.' Exs. B, F.) Officer Miller, also in a marked squad car, followed directly behind Sgt. Hoshaw. (Defs.' Ex. F.)

The Dodge approached and then stopped at the stop sign at the intersection of Three Mile Road and Harper Avenue. With Officer Miller in the marked squad car directly behind Sgt. Hoshaw's marked squad car, Sgt. Hoshaw activated the emergency lights, pulled around to the left of the Dodge Shadow and in front of it at an angle in an attempt to box the Dodge Shadow in and prevent it from fleeing from the police. (Defs.' Ex. B, F.) Officer Miller's vehicle was positioned directly behind the Dodge Shadow. (Defs.' Ex. B.)

Video tape from Officer Miller's and Sgt. Hoshaw's squad cars confirm this course of events. The tapes show that Officer Miller joined in behind Sgt. Hoshaw's police car, which was following the car Williams was driving. Williams' car approached the intersection of Three Mile Road and Harper Avenue with the left turn signal on and then stopped at a stop

3

sign. Sgt. Hoshaw, following directly behind Williams, put on his emergency flashers and pulled his police car in front of Williams' car, parking it at an angle so as to block its forward movement into traffic on Harper Avenue, a major thoroughfare in the City of Detroit. Officer Miller pulled his squad car up immediately behind Williams' car in an attempt to block Williams' car from fleeing from the police. As Sgt. Hoshaw got out of his squad car and began walking back towards the Dodge Shadow, Williams intentionally backed the Dodge Shadow into Officer Miller's car in an attempt to flee from the police. Sgt. Hoshaw then hurried over to Williams' car with his gun drawn, pointed the gun inside the driver's window, yelling an obscenity at Williams. Williams immediately accelerated the car, turning it to the right, driving away from Sgt Hoshaw, around his squad car and toward Harper Avenue. As he did this, Sgt. Hoshaw was knocked to the ground.

Officer Miller immediately ran after Williams' car, as Williams' was driving it to the right, around Sgt. Hoshaw's squad car and towards the street, and fired shots at the car. The next thing heard is Williams' car's engine running and Officer Miller yelling, "turn it off." (Defs.' Ex. F, video from Officer Miller's squad car.) One of the bullets from Officer Miller's gun shot Williams in the back of the neck, leaving him paralyzed. All of this took less than one minute. (Defs.' Ex. F, video from Officer Miller's squad car.)

Realizing Williams has been shot in the back of the neck, Officer Miller is then heard reporting "shots fired," ordering EMS, and saying to Williams: "EMS is coming....just keep breathing man"; "you doing okay"; "keep breathing, stay with me." He is also heard saying to Williams, "You almost ran over my Sheriff man"; and says to Sgt. Hoshaw, "I thought he was going to kill you boss." (Defs.' Ex. F, video from Officer Miller's squad car.)

4

Several other police officers arrived on the scene and several, including Officer Miller, attended to Williams' medical needs. An ambulance arrived within 7 minutes. (Defs.' Ex. F, video from Officer Miller's squad car; Plfs' Ex. A, Badge No. 137, Preliminary Compl. Record.) Williams was taken to the hospital after being stabilized. Sgt. Hoshaw was treated for minor injuries and released. (Defs.' Ex. B, 8/20/03 Investigator's Report.)

## II. Standards of Review

Because matters outside the pleadings have been presented to and not excluded by the Court, Defendants' motion "shall be treated as one for summary judgment" brought pursuant to Rule 56. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III.  Analysis

Defendants Officer Miller and the City argue that: (1) Officer Miller is entitled to qualified immunity; (2) Officer Miller's use of deadly force was objectively reasonable under the circumstances and thus there was no Fourth Amendment violation; (3) Defendants were not deliberately indifferent to Williams' serious medical need; and (4) Plaintiffs cannot state a claim of municipal liability against the City.

Plaintiffs respond with procedural and substantive arguments. Plaintiffs first invoke Fed. R. Civ. P. 56(f) and argue that dismissal under Fed. R. Civ. P. 56(c) is inappropriate because discovery in this matter does not close until November 1, 2005. Plaintiffs next argue that Defendants are not entitled to qualified immunity because, under the circumstances presented here, Officer Miller's use of deadly force violated Williams' clearly established constitutional right to be free from excessive force.

The Court begins its analysis with Plaintiffs' procedural argument that Defendants' motion for summary judgment should be denied as premature. It then addresses the parties' substantive arguments.

### A.  Plaintiffs' Rule 56(f) Argument

6

Although Plaintiffs invoke Rule 56(f) and raise general arguments about the need for additional discovery, Plaintiffs fail to provide the Court with a Rule 56(f) affidavit detailing what material facts they hope to uncover or how any discovery in addition to the evidence already produced will assist the Court in determining whether Officer Miller's use of deadly force was objectively reasonable under the facts and circumstances he confronted on August 17, 2003. Accordingly, Plaintiffs' argument that Defendants motion for summary judgment should be denied as premature is rejected. *See Jefferson v. Chattanooga Publishing Co.*, 375 F.3d 461, 463 (6th Cir. 2004).

The Court now addresses the parties' substantive arguments.

**B.  Plaintiffs' Substantive § 1983 Claims**

Section 1983 imposes civil liability on any person who, acting under color of state law, deprives another person of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "While government officials may be subject to § 1983 actions for violating an individual's constitutional right, a plaintiff must overcome the officials' qualified immunity in bringing such an action." *Flaskamp v. Dearborn Pub. Sch.*, 385 F.3d 935, 940-41 (6th Cir. 2004).

Defendants assert that Officer Miller is entitled to qualified immunity. Accordingly, this Court must apply a two-step analysis. First, it must determine whether "the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* Second, if the facts show that a constitutional violation has occurred, then the Court must determine "whether the right was clearly established." *Id.* "The relevant, dispositive inquiry

7

in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

### 1. Alleged Constitutional Violation

Considering the facts in the light most favorable to Plaintiffs, this Court must determine whether a rational jury could find that Officer Miller's use of deadly force was objectively unreasonable under the circumstances, thus violating Williams' Fourth Amendment right to be free from excessive force. *See Brosseau v. Haugen*, ___ U.S. ___, ___, 125 S. Ct. 596, 598 (2004). In *Brosseau*, the Supreme Court summarized the constitutional principles to be applied in excessive force cases.

> [T]he constitutional question in this case is governed by the principles enunciated in *Tennessee v. Garner*, 471 U.S. 1 (1985), and *Graham v. Connor*, 490 U.S. 386 (1989). These cases establish that claims of excessive force are to be judged under the Fourth Amendment's "'objective reasonableness'" standard. *Id.* at 388. Specifically with regard to deadly force, we explained in *Gardner* that it is unreasonable for an officer to "seize an unarmed, non-dangerous suspect by shooting him dead." 471 U.S. at 11. But "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Ibid.*

*Brosseau*, ___ U.S. at ____, 125 S. Ct. at 598.

Defendants argue here that, based on Williams' undisputed conduct as shown in the squad car video, Officer Miller had probable cause to believe that Williams posed a threat of serious harm to his fellow officer, to himself, and to the public. This Court agrees.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). It is also made "in light of the facts and

circumstances confronting [the officers], without regard to their underlying intent or motivation." *Id.* at 397.   As observed by the Sixth Circuit:

> Under *Graham*, we must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes "reasonable" action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.

*Smith v. Freland*, 954 F.2d 343, 346 (1992).

Considering the fast evolving and uncertain facts and tense circumstances confronting Officer Miller in rapid succession, this Court concludes that his actions were objectively reasonable.  Officer Miller and Sgt. Hoshaw were attempting to stop and question suspected car thieves. The situation immediately turned dangerous when Williams backed the Dodge into Officer Miller's squad car.  It escalated when Sgt. Hoshaw, seeing this, rushed to the driver's side window with his gun drawn and Williams turned his vehicle to the right and accelerated around Sgt. Hoshaw's squad car towards Harper Avenue.  As Williams accelerated the car, Sgt. Hoshaw was thrown to the ground.  Officer Miller immediately reacted.  This Court concludes that, based on Williams' conduct, Officer Miller had probable cause to believe that Williams posed a threat of serious physical harm to Sgt. Hoshaw, himself, and to other citizens.  Viewed objectively, Williams' conduct showed that he was not intimidated by the police presence, would not hesitate to deliberately use the vehicle as a weapon, and was intent on fleeing from the police, which in turn posed a threat to the public traveling on a major Detroit thoroughfare.  Officer Miller did not know that Williams or his passengers were unarmed.  Moreover, based on Williams' conduct, it was

uncertain if he would once again back up the vehicle towards Sgt. Hoshaw or would speed off into traffic, jeopardizing other motorists and citizens in the area.

This decision embodies the Supreme Court's teaching in *Graham* that:

> The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.

490 U.S. at 396-97. The Sixth Circuit Court of Appeals has considered similar circumstances where an officer used deadly force against an unarmed suspect who was fleeing from the police in a vehicle, and has likewise determined that there was no Fourth Amendment violation when the officer, confronting tense, uncertain, rapidly unfolding events, had probable cause to believe the suspect posed a threat of serious physical harm to the police or other citizens. *See Dudley v. Eden*, 260 F.3d 722, 726-27 (6th Cir. 2001); *Scott v. Clay County, Tenn.*, 205 F.3d 867, 878-79 (6th Cir. 2000); *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) (observing that "a car can be a deadly weapon" and holding the officer's decision to stop the car from possibly injuring others was reasonable); *Bell v. City of Cleveland*, No. 96-3801, 1997 U.S. App. LEXIS 28738 (6th Cir. Oct. 14, 1997) (*per curiam*).

Plaintiffs argue that, when Sgt. Hoshaw approached Williams in the Dodge Shadow with his gun drawn and pointed at Williams, Williams thought "he was going to be killed and the only way he could possibly avoid being gunned down was to escape", that Williams "was only trying to escape his 'cowboy' renegade captors, and never intended to harm anyone, especially the officers;" that Sgt. Hoshaw "recklessly thrust himself" at Williams' moving vehicle" and "inserted his pistol wielding arm into the driver's open window area and

pointed a gun at Mr. Williams' head." (Plfs.' Resp. at 11.) Plaintiffs' arguments are to no avail. The issue before the Court is whether a reasonable officer in Officer Miller's shoes would have feared for Sgt. Hoshaw's life, his life, or the safety of the public in general. To answer that question, the Court does not consider what was in Williams' mind when he first backed into Officer Miller's squad car and then, upon sight of Sgt. Hoshaw's approach, immediately accelerated forward, forcefully knocking the Sgt. to the ground. Williams' intentions are simply not relevant to this Court's determination "whether, from an objective viewpoint and taking all factors into consideration," Officer Miller's actions were reasonable. *Bell v. City of East Cleveland*, No. 96-3801, 1997 U.S. App. LEXIS 28738, *9 (6th Cir. Oct. 14, 1997) (quoting with approval *Wilson v. Meeks*, 52 F.3d 1547, 1553 (10th Cir. 1995)).

Plaintiffs also proffer the report of one of their experts, Francis R. Murphy, who opines that Sgt. Hoshaw and Officer Miller engaged in reckless conduct that created and caused Williams to be shot and paralyzed. (Plfs.' Ex. E, Murphy Expert Report.) The expert opines that Sgt. Hoshaw and Officer Miller's conduct was contrary to proper police procedures. (*Id.*) This, however, is not enough to establish a constitutional violation or the basis for a § 1983 claim. As the Sixth Circuit has repeatedly observed, "'mere negligence may not serve as a basis for a section 1983 claim.'" *Bell*, 1997 U.S. App. LEXIS 28738, *12 (quoting *Yates v. City of Cleveland*, 941 F.2d 444, 447 (6th Cir. 1991)).

Plaintiffs here, like the plaintiff in *Bell*, "also relies upon the Seventh Circuit's decision in *Estate of Starks v. Enyart*, 5 F.3d 230 (7th Cir. 1993), to further argue that [Williams] became a threat to [the officer] only because of the actions of [the officer]." *Bell*, 1997 U.S. App. LEXIS 28738, *14. Just like *Bell*, the facts presented in this case are easily

11

distinguishable from those presented in *Starks*. The video from Officer Miller's squad car objectively presents the facts as they occurred. It shows that, contrary to Plaintiffs' argument here, Sgt. Hoshaw did not create a situation where Williams could not have avoided putting either Sgt. Hoshaw's life or Officer Miller's life in danger. Rather than stopping and waiting for the officers to approach him, Williams deliberately backed his vehicle into Officer Miller's squad car and then, despite seeing Sgt. Hoshaw in full uniform approaching him, deliberately accelerated the car in an attempt to maneuver around Sgt. Hoshaw's squad car and into traffic, and, in the process, knocked Sgt. Hoshaw to the ground.

In light of the above, this Court concludes that Officer Miller did not violate Williams' Fourth Amendment right to be free from excessive force.

### 2. Clearly Established Law

This Court further concludes that, even if a constitutional violation had occurred, Officer Miller would be entitled to qualified immunity. "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Brosseau*, ___ U.S. at ___, 125 S. Ct. at 599. It is Plaintiffs' burden to convince the Court that the law is clearly established. *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997).

As recently observed by the Supreme Court:

> Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

*Brosseau*, ___ U.S. at ___, 125 S. Ct. at 599. Moreover, when conducting this inquiry, the Court must consider the specific context of the case, not just broad propositions. *Id.* "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)). *See also Cope*, 128 F.3d at 458 (observing that the Court must "examine the asserted right at a relatively high level of specificity," and that "[t]he right must have been 'clearly established' not just is an abstract sense, but in a 'particularized' sense.").

As instructed by the Supreme Court in *Brosseau*, this Court must examine cases relevant to the situation Officer Miller confronted: "whether to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight." *Id.* at 600 (citing, among other cases, *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) and *Scott v. Clay County, Tennessee*, 205 F.3d 867, 877 (6th Cir. 2000)). As further instructed by the Sixth Circuit, "[i]n inquiring whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit Court of Appeal] and other courts within [the Sixth Circuit], and finally to decisions of other circuits." *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993). Considering the Sixth Circuit cases discussed above, all decided before the events of August 17, 2003, this Court concludes that these cases do not "clearly establish" that Officer Miller's conduct violated the Fourth Amendment. Accordingly, he would be entitled to qualified immunity.

### 3. Deliberate Indifference to Serious Medical Needs

The undisputed evidence presented to the Court shows that there is no genuine issue of material fact for trial on Plaintiffs' claim that Defendants were deliberately indifferent to Williams' serious medical needs.  As shown in Officer Miller's scout car video (Defs.' Ex. E), EMS was requested within minutes of the shooting, officers immediately attended to Williams' serious medical needs, and an ambulance arrived on the scene within seven minutes.  Accordingly, Plaintiffs' claim of deliberate indifference is likewise dismissed.

### 4.  Municipal Liability

The Defendant City can only be held liable under § 1983 if Plaintiffs can show that its police officers violated Williams' constitutional rights.  Because Plaintiffs have not satisfied this requirement, their claims against the City must be dismissed.  *See Cartwright v. City of Marine City*, 336 F.3d. 487, 495 (6th Cir. 2003); *Watkins v. City of Battle* Creek, 273 F.3d 682, 687 (6th Cir. 2001); *Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir. 2000).

### IV.  Conclusion

For the foregoing reasons, Defendants motion for summary judgment is GRANTED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  September 6, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 6, 2005, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager